(No. 75-CV-77—)

EDITH LOPEZ, on behalf of OCTAVIO LOPEZ, Deceased, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 23, 1975.*

EDITH LOPEZ, Claimant, pro se.

WILLIAM J. SCOTT, Attorney General; LEONARD CAHNMANN, Assistant Attorney General, for Respondent.

PER CURIAM.

This claim arises out of a criminal offense that occured on March 18, 1974, at 4501 West Sixteenth Street, Cook County, Chicago, Illinois. Edith Lopez, wife of the victim, seeks payment of compensation pursuant to the provisions of the "Crime Victims Compensation Act," *Ill. Rev. Stat., 1973, Ch. 70, §71, et seq.* (hereafter referred to as the "Act").

This Court has carefully considered the application for benefits submitted on the form prescribed and furnished by the Court; and a report of the Attorney General of the State of Illinois which substantiates matters set forth in the application. Based upon these documents and other evidence submitted before the Court, the Court finds:

1. That the claimant's deceased husband Octavio Lopez, age 28, was a victim of a violent crims, as defined in §2(c) of the Act to wit:

"Murder", (*Ill. Rev. Stat., 1973, ch. 38, §9-1.*)

2. That on March 18, 1974, claimant's husband was shot as he boarded a C.T.A. Bus at 16th and Kilbourn. Prior to the shooting, Octavio Lopez had been leaving his place of employment, Brock & Rankin, 4501 West 16th Street, Chicago, Illinois.

3. That statements, taken by the police investigators shortly after the crime was committed, present no evidence of any provocation or wrongful act by the decedent for the shooting of him at the C.T.A. bus stop.

4. That the victim died on March 18, 1974, as a result of the injuries he received in the shooting of March 18, 1974. A further and more detailed summary of the facts and information considered by the Court is contained in the Investigatory Report prepared by the Attorney General. A copy of said report is retained in the Court's file in this matter, and the facts as reported therein are incorporated in this opinion by reference.

5. That the three suspects were charged with the murder of the victim. However, there were no eye witnesses and the three were discharged for lack of probable cause.

6. That the victim and his assailants were not related nor sharing the same household.

7. That the criminal offense was promptly reported to law enforcement officials, and claimant has fully cooperated with their requests for assistance.

8. That the claimant seeks compensation under the Act for loss of support to herself and her son, Octavio, Jr., infant.

9. That the claimant has proved to the Court's satisfaction that her loss of support as a result of the victim's death was well over $10,000 which is the maximum amount compensable under the Act.

10. That, in addition to loss of support, the claimant incurred funeral expenses for the victim and the gross amount of the pecuniary loss for this item is as follows:

Funeral . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $1,291.00

11. That, in determining the amount of compensation to which an applicant is entitled, §7(d) of the Act states that this Court—

"(d). shall deduct $200 plus the amount of benefits payments or awards, payable under the 'Workmen's Compensation Act,' or from local governmental, State or Federal funds or from any other source, (except annuities, pension plans, Federal social security benefits and the net proceeds of the first $25,000) Twenty-five Thousand Dollars of life insurance that would inure to the benefit of the applicant . . .)."

We interpret the above provision to mean that the benefits received by the victim's family as a result of his death, and deduction of $200, shall be deducted from the total loss sustained and not from the $10,000 maximum amount payable under the Act. On this point, we are adopting a recent opinion of the Massachusetts Supreme Court on the same point arising under the provisions of an Act identical to ours in all material respects: *Gurley* v. *Commonwealth (1973) 296 N.E.2d 477.*

12. That in the claim before us, the only benefits received by the claimant from other sources which must be deducted from his loss, as contemplated by §7(d) of the Act, were Public Aid benefits of $117/month. This amount has been deducted in determining the amount of loss of support in ¶9. The statutory deducting of $200, having been deducted from the amount of loss as calculated in ¶9 and 10 leaves the amount of loss sustained

by the claimant and her son far in excess of the $10,000 maximum amount that can be awarded under the Act for any loss resulting from a violent crime. Hence, the claimant and her son are entitled to an award in the maximum amount payable under the Act, $10,000.

The Court takes note of the fact that the minor son of the deceased victim, who is named in ¶8 of this opinion, was also dependent on Octavio Lopez as was his surviving spouse, Edith Lopez, the claimant, and the mother of decedent's minor son who is an infant.

Under these circumstances the Court is required to interpret and comply with the following language of the Act found in §8(b):

"(b) . . . If the Court of Claims finds, in the case of an application made a person dependent for (her) support on a deceased victim, that persons other than the applicant were also dependent on that victim for their support, it (the court) shall also (1) name those persons in its order; (2) state the percentage share of the total compensation award and the dollar amount to which each is entitled, and (3) order that those amounts be paid to those persons directly or, in the case of a minor or incompetent, to his (her) guardian or conservator, as the case may be."

To comply strictly with the above legislative directive, it would seem appropriate and reasonable to order the distribution of the $10,000 award in accordance with the rule of distribution stated in *§11(1) of the Probate Act.* This rule would allow one-third ($3,333.33) to the victim's surviving spouse, and the remaining two-thirds ($6,666.66) to the victim's minor son.

However, to make distribution in this manner, we believe would impose an undue hardship on the mother. If the $10,000 award were paid to her in a lump sum, she would be holding $6,666.66 in trust for her minor son. Although she is guardian of his person, she would have no power to administer his estate nor use his funds unless she is duly appointed guardian of her minor son's

estate as provided by law. *Perry* v. *Carmichael* (1880) *95 Ill. 519.* After such appointment she would be required to manage her son's funds frugally under the direction of the appointing Court and present periodic accounts of her guardianship to such Court. She would also be responsible for court costs and any legal expenses required in filing her petition for appointment, oath, surety bond and accounts.

To obviate the necessity of the claimant being appointed guardian of her son's estate, and considering all other facts in this case, the Court believes that the best interest of the victim's family would be served by our ordering that this award be disbursed to the claimant in periodic monthly payments as authorized in §8(a) (4) of the Act. As the natural guardian of her minor son, the mother has a legal obligation to provide for his suitable support and education. In fulfilling this obligation, we believe she would necessarily be required to expend the proper amount from each monthly payment received hereunder for the care and nurture of her son as well as for her own necessities.

It Is HEREBY ORDERED that the total sum of $10,000 be awarded to the claimant and her minor son, collectively, as persons who were both dependent for their support on Octavio Lopez, the deceased victim of a violent crime.

It Is FURTHER ORDERED that the aforesaid award be paid to the claimant, Edith Lopez, in twenty (20) equal monthly installments of $500 each. The court directs that said monthly payments shall be made from the COURT OF CLAIMS FUND insofar as it is legally possible to do so.